IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICOLE L. HENDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 10-1638 |
| ) | |
| MICHAEL J. ASTRUE, ) | Magistrate Judge Lisa Pupo Lenihan |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.     Introduction**

Plaintiff Nicole L. Henderson ("Henderson") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f]. For the reasons that follow, the decision of the Commissioner will be affirmed.

**II.    Procedural History**

Henderson protectively applied for DIB and SSI benefits on June 13, 2007, alleging disability as of November 21, 2005. R. at 15, 68, 759, 779. The applications were administratively denied on September 27, 2007. R. at 38, 767, 779. Henderson responded on October 18, 2007, by filing a timely request for an administrative hearing. R. at 42-43. On June 11, 2008, a hearing was held in Johnstown, Pennsylvania, before Administrative Law Judge Patricia C. Henry (the "ALJ"). R. at 777. Henderson, who was represented by counsel, appeared

1

and testified at the hearing. R. at 780-812. Mark Heckman ("Heckman"), an impartial vocational expert, also testified at the hearing. R. at 812-817.

In a decision dated October 1, 2008, the ALJ determined that Henderson was not "disabled" within the meaning of the Act. R. at 15-27. On October 15, 2008, Henderson sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. R. at 11. The Appeals Council denied Henderson's request for review on October 29, 2010, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. at 7. Henderson commenced this action on December 8, 2010, seeking judicial review of the Commissioner's decision. ECF Nos. 1 & 3. Henderson and the Commissioner filed motions for summary judgment on May 16, 2011, and June 16, 2011, respectively. ECF Nos. 12 & 14. In accordance with 28 U.S.C. § 636(c)(1), the parties have consented to have this matter adjudicated by a United States Magistrate Judge. ECF No. 11. The cross-motions for summary judgment filed by the parties are the subject of this memorandum opinion.

### III. Standard of Review

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable

amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to

>be a more adequate or proper basis. To do so would propel the court into the
>domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## IV.     The ALJ's Decision

In her decision, the ALJ determined that Henderson had not engaged in substantial gainful activity subsequent to her alleged onset date. R. at 17. Henderson was found to be suffering from fibromyalgia, cervical degenerative disc disease, mild levoscoliosis of the thoracic spine, myofascial pain syndrome, asthma, a major depressive disorder, a bipolar disorder, a generalized anxiety disorder, a panic disorder (without agoraphobia), a history of cannabis abuse, gastroesophageal reflux disease ("GERD"), esophagitis, and a hiatal hernia. R. at 18. Although her GERD, esophagitis and hiatal hernia were deemed to be "non-severe," her remaining impairments were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii) and 416.920(c). R. at 18. The ALJ concluded that these impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 18-21.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Henderson's residual functional capacity as follows:

>After careful consideration of the entire record, the undersigned finds that the
>claimant has the residual functional capacity to perform sedentary work as
>defined in 20 CFR 404.1567(a) and 416.967(a) except for work requiring more
>than occasional postural maneuvers such as stooping, kneeling, crouching,
>crawling and climbing of ramps, stairs, ladders, ropes and scaffolds, concentrated
>exposure to fumes, odors, dusts, gases, environments with poor ventilation, hot or

>     cold temperature extremes, or extreme dampness and humidity, or the
>     performance of other than simple, routine, repetitive tasks, not performed in a
>     fast-paced production environment, involving only simple, work-related
>     decisions, and in general, relatively few work place changes.

R. at 21.[1] In light of this assessment, it was determined that Henderson could not return to her "past relevant work"[2] as a cashier, stock clerk, deli clerk or switchboard operator. R. at 25.

Henderson was born on August 12, 1984, making her twenty-one years old on her alleged onset date and twenty-four years old on the date of the ALJ's decision. R. at 25, 68, 759. She was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c). She had a high school education and an ability to communicate in English. R. at 93, 99, 135, 143, 779; 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Henderson could work as a final assembler, product inspector or nut sorter. R. at 26. Heckman's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[3] R. at 816.

## V.     Discussion

Henderson was involved in motor vehicle accidents on June 15, 2003, November 6, 2003, and November 16, 2004. R. at 189-191, 208-211, 246-249. Her neck and back impairments were apparently triggered by these accidents. Between April 10, 2005, and November 21, 2005,

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

[2] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[3] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

Henderson worked as a telephone operator for a car dealership. R. at 94, 549. Her alleged onset date coincides with the date on which she was laid off. R. at 94, 68, 759. Although it is not entirely clear why Henderson was laid off, the record contains evidence suggesting that the layoff was partially attributable to her medical condition and consequent inability to perform the duties of her job in a satisfactory manner.[4] R. at 549.

Unfortunately, the record does not paint a very clear picture of Henderson's work history during the period of time at issue. R. at 188. Nonetheless, it is undisputed that Henderson continued to work on a part-time basis after her alleged onset date. Henderson testified that she had worked between twenty and twenty-five hours per week at a Giant Eagle prior to January 2007, when she learned that she was pregnant. R. at 780-781, 784-785. She further explained that she had quit her job in January 2007 after learning of the pregnancy. R. at 785. Henderson attributed her decision to leave her job at Giant Eagle to the fact that her boyfriend had "gotten a better job" and suggested that she "stay at home." R. at 785. She gave birth to her son on August 18, 2007, and never went back to work. R. at 520-526, 785.

At the hearing, Henderson testified that she could not sit, stand or walk for long periods of time. R. at 786. She stated that she could "barely lift a gallon of milk." R. at 787. Henderson explained that she frequently needed to use a grocery cart "as a brace" in order to stay on her feet while shopping. R. at 794. She described incidents in which her neck had "locked up" in the middle of the night, forcing her to seek assistance from her mother and sister in order to get out of bed. R. at 803. When questioned about her standing and walking abilities,

---

[4] Some portions of the record indicate that Henderson continued to work for the car dealership on a part-time basis after her alleged onset date. R. at 188. Henderson was apparently confused about the timeframe when questioned about her work history at the hearing. R. at 780-786. The documentary record suggests that Henderson continued to work as a telephone operator until August 18, 2007, when she gave birth to her son. R. at 188. At the hearing, however, Henderson testified that she had only worked for the car dealership for approximately three months in 2006. R. at 781-782.

7

Henderson testified that she could walk for no more than twenty minutes at a time, and that she could not stand in the same place for extended periods of time. R. at 806. She asserted that she would typically have four "bad days" during the course of a seven-day week. R. at 802.

In her decision, the ALJ determined that Henderson's "statements concerning the intensity, persistence and limiting effects" of her impairments were not entirely credible. R. at 22. Henderson argues that the ALJ erred in making this determination. ECF No. 13 at 17-18. She contends that the ALJ wrongfully rejected her testimony without relying on contrary medical evidence. *Id.*

The Commissioner must give "great weight" to a claimant's subjective complaints of pain whenever the record contains objective evidence of an impairment that could reasonably be expected to cause pain. *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). The ALJ acknowledged in her opinion that Henderson's impairments "could reasonably be expected to produce the alleged symptoms." R. at 22. Nevertheless, she concluded that Henderson's "self-reported activities of daily living" were inconsistent with those of an individual who was "experiencing totally debilitating symptomatology." R. at 22. In support of her conclusion, the ALJ observed that Henderson had been "able to consistently work as a cashier and deli clerk for a variety of employers after her alleged onset date with no apparent difficulty." R. at 23.

Under the Commissioner's regulations, work can constitute "substantial gainful activity" even if it is performed on a part-time basis. 20 C.F.R. §§ 404.1572(a), 416.972(a). Consequently, a claimant who is working on a part-time basis can sometimes be denied benefits at the first step of the sequential evaluation process even if he or she suffers from impairments which prevent him or her from performing the duties of a full-time job. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). In this case, however, the work performed by Henderson

after November 21, 2005, did not constitute "substantial gainful activity." R. at 17. Her applications for DIB and SSI benefits were denied at the fifth step of the sequential evaluation process. R. at 25-26. At the fifth step, the Commissioner cannot satisfy his burden of production without establishing the existence of jobs in the national economy that a claimant can perform on a *full-time* basis. *Bladow v. Apfel*, 205 F.3d 356, 359-360 (8th Cir. 2000); *Kelly v. Apfel*, 185 F.3d 1211, 1213-1215 (11th Cir. 1999); *Carlisle v. Barnhart*, 392 F.Supp.2d 1287, 1290 (N.D.Ala. 2005); *Grove v. Barnhart*, 382 F.Supp.2d 1104, 1111 (S.D.Iowa 2005); *Moody v. Barnhart*, 295 F.Supp.2d 1278, 1283 (N.D.Ala. 2003). In order to maintain a full-time job, an individual must be able to work on a "regular and continuing basis." 61 FED. REG. 34474, 34475 (1996). In this context, the term "regular and continuing basis" generally refers to a schedule requiring an individual to work for eight hours per day and five days per week. *Id.*

Dr. Stephanie Le, Henderson's pain management specialist, opined on May 27, 2008, that Henderson could work on a part-time basis. R. at 664. Dr. Le reported that Henderson could work on a full-time basis only if she were able to find a job permitting her to take frequent breaks to "stretch," "rest," "sit" or "lie down." R. at 664. Henderson was described by Dr. Le as being incapable of maintaining her concentration for 75% of a standard workday. R. at 665. Alluding to Dr. Le's opinion, Henderson testified that she knew of no employer who would permit her to regularly "lie down" on the job. R. at 805. Heckman testified that employers in the national economy generally required their employees to be "on task" for 90% of a typical workday. R. at 816.

Henderson argues that the ALJ should have credited her complaints of disabling pain, since they were "corroborated by competent medical evidence." ECF No. 13 at 18. Henderson's ability to perform the duties of a part-time job, of course, did not conclusively establish her

9

ability to work on a "regular and continuing basis." 61 FED. REG. 34474, 34475 (1996). Under the Commissioner's regulations, however, a claimant's ability to work on a part-time basis may constitute probative evidence of his or her ability to perform the duties of a full-time job. 20 C.F.R. §§ 404.1571, 416.971. Henderson testified that she had left her job at Giant Eagle because of her pregnancy. R. at 785. She explained that her decision had also been influenced by the fact that her boyfriend had obtained a "better job" and urged her to "stay at home." R. at 785. The ALJ expressly relied on this portion of the testimonial record in determining that Henderson was not disabled. R. at 21. Under these circumstances, it was not unreasonable for the ALJ to reject Henderson's allegations of "totally debilitating symptomatology." R. at 22.

In determining that Henderson was capable of engaging in a limited range of sedentary work activities, the ALJ placed some reliance on the fact that Henderson was able to perform various household chores and care for her personal needs. R. at 22. Henderson asserts that such activities cannot be used to establish her ability to engage in substantial gainful activity. In *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988), the United States Court of Appeals for the Third Circuit held that an administrative law judge could not reject the opinions of three treating physicians solely because the claimant could take care of his personal needs, perform limited household chores, and occasionally go to church. Henderson relies on *Frankenfield* in support of her motion for summary judgment. ECF No. 13 at 19.

Contrary to Henderson's assertion, *Frankenfield* does not preclude the Commissioner from considering a claimant's daily activities as a factor relevant to a claimant's credibility. Indeed, the Commissioner's regulations specifically recognize that a claimant's "daily activities" may shed light on the extent to which pain may impact his or her ability to work. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). In *Frankenfield*, the Court of Appeals was presented with a

situation in which the findings of three treating physicians had been rejected *solely* on the basis of a claimant's ability to engage in sporadic activities. *Frankenfield*, 861 F.2d at 408. The present case is markedly different. On September 12, 2007, Dr. Randy L. Swackhammer performed a consultative physical examination of Henderson in connection with her applications for DIB and SSI benefits. R. at 564. After performing the examination, Dr. Swackhammer reported that all of the appropriate ranges of motion had been tested and found to be "within normal limits." R. at 565. Gennafer Shaw ("Shaw"), a nonexamining medical consultant, later relied on Dr. Swackhammer's examination report to opine that Henderson could perform a range of "medium"[5] work that did not involve concentrated exposure to fumes, odors, dusts, gases or poor ventilation. R. at 566-571. The ALJ repeatedly referenced Dr. Swackhammer's findings in her opinion. R. at 21-24. Thus, Henderson's applications for benefits were not rejected *solely* because she was able to perform limited household chores and care for her personal needs.

The Court acknowledges that Dr. Beth Maxwell, Henderson's obstetrician/gynecologist, reported on August 20, 2007, that Henderson could not sit for more than two hours during the course of an eight-hour workday. R. at 562. Dr. Maxwell's findings were consistent with those of Dr. Le. R. at 661. When presented with conflicting medical evidence, however, the Commissioner is "free to choose the medical opinion of one doctor over that of another." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009). Given that Dr. Swackhammer's examination had yielded normal results, the ALJ was not required to find Henderson to be limited to the degree alleged by Dr. Le and Dr. Maxwell. *Newhouse v. Heckler*, 753 F.2d 283, 285-286 (3d Cir. 1985).

---

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

Henderson contends that the ALJ's residual functional capacity assessment and corresponding hypothetical questions to Heckman did not fully account for all of the limitations caused by her impairments. ECF No. 13 at 19-20. She specifically faults the ALJ for failing to account for her mental impairments. *Id.* At the hearing, Henderson testified that the side effects of her pain medication had adversely impacted her memory. R. at 807-808. She stated that she had sometimes experienced "panic attacks" and "really bad chest pains" while shopping in crowded stores. R. at 808. Henderson further explained that her bipolar disorder had frequently caused her to have emotional outbursts. R. at 809. She argues that the ALJ failed to account for these "symptoms," and that Heckman's testimony did not satisfy the Commissioner's burden at the fifth step of the sequential evaluation process. ECF No. 13 at 19-20.

A vocational expert's testimony cannot be relied upon to establish the existence of jobs in the national economy consistent with a claimant's residual functional capacity unless the question eliciting that testimony properly incorporates all of the claimant's functional limitations. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). Where a credibly established limitation is omitted from an administrative law judge's hypothetical question to a vocational expert, there is a danger that the vocational expert will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). In this case, the ALJ's hypothetical questions to Heckman incorporated all of the limitations included within the ultimate assessment of Henderson's residual functional capacity. R. at 21, 813-816. Because Heckman was informed of every limitation found by the ALJ, Henderson's challenge to the sufficiency of his testimony is more properly characterized as a direct challenge to the ALJ's underlying residual functional capacity assessment. *Rutherford v. Barnhart*, 399 F.3d 546, 554, n. 8 (3d Cir. 2005).

Dr. Randall S. Orr, a psychiatrist, evaluated Henderson on February 6, 2008. R. at 654-656. He gave her a Global Assessment of Functioning ("GAF") score of 50, which was indicative of "serious symptoms." R. at 656; *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV-TR") 34 (4th ed. 2000). The ALJ accorded only "minimal weight" to Dr. Orr's opinion. R. at 25. In so doing, she noted that Dr. Sanford Golin, a nonexamining medical consultant, had determined on March 24, 2006, that Henderson's mental impairments were "non-severe." R. at 25, 412.

Henderson cannot impugn the ALJ's residual functional capacity assessment by pointing to Dr. Orr's examination findings. While a low GAF score may sometimes be indicative of an individual's inability to work, it can also be indicative of limitations having no bearing on his or her ability to maintain a job. *Bracciodieta-Nelson v. Commissioner of Social Security*, 782 F.Supp.2d 152, 165 (W.D.Pa. 2011). In his examination report, Dr. Orr expressed doubt that Henderson would be awarded Social Security disability benefits based on her "emotional symptoms." R. at 655. He stated that Henderson had attributed her inability to work to her "physical pain." R. at 655. The ultimate inquiry, of course, must account for the combined effect of Henderson's physical and mental limitations. *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982). Nonetheless, Dr. Orr did not translate Henderson's "emotional symptoms" into work-related limitations. R. at 654-656. Under the Commissioner's regulations, a claimant's residual functional capacity is defined as the most that he or she can do despite the "physical and mental limitations that affect what [he or she] can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "Symptoms" that do not result in functional limitations have no bearing on a claimant's residual functional capacity. The claimant bears the burden of proving that his or her physical or mental impairments actually result in functional limitations. *Baker v.*

*Astrue*, 617 F.Supp.2d 498, 510 (E.D.Ky. 2008). Although Henderson complains that the ALJ did not account for her "panic attacks, anxiety, tearfulness and emotional outbursts," she fails to explain how these "symptoms" result in work-related limitations. For this reason, her argument is manifestly unpersuasive.

Henderson's argument is unavailing for other reasons as well. The Commissioner points out that the ALJ accommodated Henderson's mental limitations by precluding a fast-paced production environment and limiting her to simple, routine, repetitive tasks involving only simple work-related decisions and relatively few workplace changes. ECF No. 15 at 17. Henderson fails to explain why she believes that these limitations did not accommodate Dr. Orr's examination findings. ECF No. 13 at 19-20. Furthermore, the Court notes that when Heckman identified the jobs later relied upon by the ALJ in determining that Henderson was not disabled, he considered a hypothetical individual who was limited to only occasional interaction with co-workers and members of the general public. R. at 815-816. Although this limitation was not included within the ALJ's residual functional capacity finding, it was nevertheless accounted for in Heckman's testimony. R. at 21, 815-816. Given the overinclusiveness of the residual functional capacity actually considered by Heckman, it follows *a fortiori* that Henderson's mental limitations cannot serve as a basis for setting aside the ALJ's decision under the present circumstances.

At the hearing, Henderson testified that her neck and back impairments had often forced her to seek treatment in the emergency room at Latrobe Hospital. R. at 811. The documentary record indicates that Henderson visited the emergency room twenty-two times between January 1, 2006, and May 24, 2008. R. at 425-753. Only seven of those visits, however, were directly

related to her neck and back impairments.[6] R. at 434-445, 455-465, 479-487, 597-616, 625-635, 725-738. During the relevant period of time, Henderson sought treatment in the emergency room for a sinus infection,[7] a facial contusion,[8] an ankle sprain,[9] an eye infection,[10] a migraine headache,[11] a stomach ailment,[12] a sore throat,[13] a contusion on her left foot,[14] an earache,[15] and various dental problems.[16] The record also contains evidence pertaining to the obstetrical and gynecological treatment that Henderson received during and after her pregnancy. R. at 505-526. These transitory impairments do not warrant a finding of statutory disability. In order to establish his or her entitlement to Social Security disability benefits, a claimant must show that both his or her *medically determinable impairment* (or combination of impairments) and his or her *inability to work* have lasted (or are expected to last) for the statutory twelve-month period. *Barnhart v. Walton*, 535 U.S. 212, 214-222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). Because several of Henderson's trips to the emergency room were caused by short-term impairments, they do not undermine the ALJ's decision denying Henderson's applications for DIB and SSI benefits.

Henderson undoubtedly suffers from serious physical and mental impairments. The limitations resulting from those impairments, however, were adequately accommodated by the

---

[6] It could be argued that only five of Henderson's visits to the emergency room were necessitated by her neck and back impairments. On September 3, 2007, Henderson went to the emergency room for a post-partum pelvic examination after experiencing pain in her lower back and pubic area. R. at 625-635. She had just given birth two weeks earlier. R. at 520-526. Henderson went to the emergency room again on September 26, 2007, after falling down a flight of stairs. R. at 605-616. These two visits were arguably related to factors other than her neck and back problems. Nevertheless, the Court assumes *arguendo* that they were related to Henderson's neck and back impairments in some way.
[7] R. at 425-433.
[8] R. at 466-478.
[9] R. at 488-499.
[10] R. at 501-504.
[11] R. at 591-596.
[12] R. at 643-651.
[13] R. at 697-707.
[14] R. at 708-715.
[15] R. at 716-724.
[16] R. at 447-454, 617-624, 739-753.

ALJ's restrictive determination concerning Henderson's residual functional capacity. R. at 21. Consequently, the Court will affirm the administrative decision of the Commissioner.

## VI. Conclusion

The Commissioner's decision denying Henderson's applications for DIB and SSI benefits is "supported by substantial evidence." 42 U.S.C. § 405(g). Accordingly, the Court will deny Henderson's motion for summary judgment (*ECF No. 12*), grant the Commissioner's motion for summary judgment (*ECF No. 14*), and affirm the Commissioner's final decision in this case.

Dated: Dec. 6, 2011

_____
    LISA PUPO LENIHAN
    Chief United States Magistrate Judge

cc:     All counsel of record